UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**MELVIN PORTER CARSON**                                                    **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO. 3:22-CV-P193-GNS**

**COOKIE CREWS** *et al.*                                             **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This is a *pro se* civil-rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some claims and allow one claim to proceed.

**I.**

Plaintiff Melvin Porter Carson was previously incarcerated at Roederer Correctional Complex (RCC). He brings this action against Kentucky Department of Corrections (KDOC) Commissioner Cookie Crews; RCC Warden Jessie Ferguson; RCC Major Thomas Harper; and RCC C.O. Amanda Harper. He sues these Defendants in both their official and individual capacities.

Plaintiff makes the following allegations in the complaint (DN 1):

> Commissioner Cookie Crews . . . allow Wardens and Officers at each of the institutions [to] continue in a pattern of systematic discrimination against myself and the LGBTQ community as a whole.
>
> Commissioner Crews was made full aware that KSP stopped transgender inmates from showering on a dailey basis, and only allowed myself and other transgender inmates to shower 3 days per week while all other inmates were allowed to shower daily.[1] Myself and LGBTQ community were placed into segregation when we showered outside of those restricted days and places. (As of July 2021).

---

[1] Although Plaintiff does not specifically state, it appears that Plaintiff was incarcerated at Kentucky State Penitentiary (KSP) prior to being incarcerated at RCC.

Commissioner Cookie Crews was made full aware that KSP was illegally censoring my J-Pay videos in grievance 21-1-198 and placed into deplorable conditions in cell housing and showering conditions. And the intentional loss of personal property to perpetuate a continual harassment of myself and other LGBTQ members.

Warden Jessie Ferguson of [RCC] beginning in August of 2021 was made aware by the Plaintiff of being targeted not by inmates but by correctional staff (C.O. Amanda Harper). Warden Ferguson's only remark to my letter was for me to "wait on Court Call" while ignoring being sexually harassed by officers. The officers at RCC made me so uncomfortable that I had to seek refuge from my Case Worker and Psychologist to try to get transferred away from RCC. After repeated harassment and made to feel different by Correctional Staff, Plaintiff's anxiety and fears would flare out of proportion to the point RCC medical department had no choice but to transfer Plaintiff to Bell County Forestry Camp in September of 2022.[2]

Warden Ferguson was fully aware of the conditions and constant harassment by CO Amanda Harper and her husband Major Thomas Harper through the filing of the PREA report, and a letter I mailed directly to her in August of 2021 advising about the targeted searches and harassment.

Correctional Officer Amanda Harper . . . embarked upon a course of Harassment once she found out I was transgender. Beginning in Mid to late July 2021 [she] started off flirting with me numerous times calling me "Big Sexy." This would occur in my bed area, in bath and shower room, and throughout the Unit. For about 3 weeks, [she] was very flirtatious and extremely nice to me. However, as soon as she found out that I identified as "transgender" she then began to target me by conducting targeted bed searches which she had never done prior to finding out I was Transgender. On August 2, 2021, [she] conducted a targeted bed search, and again on August 4, 2021 where illegally took my MP3 player. I informed Lt Bach about my situation and her harassment after she found out I was transgender. Lt Bach called CO Harper and myself into a meeting to allow me to express my concerns, then a [Prison Rape Elimination Act] PREA investigation was initiated. Because a PREA investigation was initiated against CO Harper, her husband Major Thomas Harper began to harass me which only exasperated by anxiety through constant harasments.

In August of 2021 during the height of the COVID-19 pandemic, and in the middle of the PREA Investigation, Major Thomas Harper came into the Dorm where I was assigned and announced "That One" pointing directly at me "would be moving once all the negative COVID test come back (Howbeit I did not have a negative test at that time). I was moved to a different dorm where the Unit Sgt. explained to me "Major Harper said to keep your ass out of the basement." I immediately felt

---

[2] Since this action was filed on April 11, 2022, the Court assumes that Plaintiff was actually transferred in September of 2021.

threatened by the implication of what that meant. I felt so threatened that I immediately made an appointment with my psychologist about the comments. (The basement is where C.O. Harper was working).

The fact that I [was] sexually assaulted in the past by a Correctional Officer, my anxiety flared out of control and I became paranoid not knowing when either CO Harper or her husband Major Harper would come and attack me for filing a PREA report against CO Harper. I did not know when they would conduct targeted searches to continue a course of harassment against me for being transgender.

As relief for these alleged violations of his rights, Plaintiff seeks damages.

Plaintiff also filed a Memorandum of Law in support of his complaint (DN 1-2) in which Plaintiff mostly restates the allegations set forth in the complaint. However, therein, Plaintiff additionally states that Defendant Amanda Harper would "repeatedly trap [Plaintiff] in odd areas of the prison to make comments about how sexy [Plaintiff] was" and would "call [Plaintiff] over in a corner of the dorm and touch herself in front of [Plaintiff] and make sexual remarks or innuendoes about being married to LeBron James." *Id.* Plaintiff additionally asserts that after Plaintiff filed a PREA complaint against Defendant Amanda Harper, Defendant Thomas Harper "began a course of scare tactics and other harassing techniques . . . ." *Id.* Plaintiff also claims that both Defendants Amanda Harper and Thomas Harper violated KDOC Policies and Procedures through their alleged actions.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal

for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting

4

under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)

### A. Official-Capacity Claims

Plaintiff's official-capacity claims against Defendants are subject to dismissal. When state officials are sued in their official capacities for damages, they are not "persons" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for damages are not considered persons for the purpose of a § 1983 claim). Moreover, state officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity.").

For these reasons, the Court will dismiss Plaintiff's official-capacity claims for failure to state a claim upon which relief may be granted and for seeking damages from Defendants who are immune from such relief.

### B. Individual-Capacity Claims

**1. Defendants Crews and Ferguson**

The Court finds that the pleadings fail to state a claim against either KDOC Commissioner Crews or RCC Warden Ferguson. Plaintiff argues that these Defendants are liable to him because, despite being notified of the actions allegedly taken by the Defendant Harpers against Plaintiff, they did nothing to "stop or curtail the systemic discrimination by [the Harpers]." Upon review, it is clear that Plaintiff's claims Defendants Crews and Ferguson are based upon their supervisory roles. However, the doctrine of *respondeat superior*, or the right to control employees, does not

5

apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff's allegations do not give rise to a reasonable inference that either Defendant Crews or Defendant Ferguson had any personal involvement in the actions about which Plaintiff complains. Thus, the Court will dismiss Plaintiff's individual-capacity claims against them for failure to state a claim upon which relief may be granted.

**2. Defendant Thomas Harper**

The Court construes the complaint as asserting a First Amendment retaliation claim against Defendant Thomas Harper. Although difficult to follow, it appears that Plaintiff is alleging that Defendant Thomas Harper retaliated against Plaintiff for filing a PREA complaint against his wife, Defendant Amanda Harper, by having Plaintiff transferred to a floor where Defendant Amanda Harper did not work.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth

a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Significantly, "[n]ot every action is an adverse action; *de minimis* slights and inconveniences do not qualify." *Pasley v. Conerly*, No. 2:08-cv-13185, 2010 U.S. Dist. LEXIS 104763, at *33 (E.D. Mich. Sept. 10, 2010).

Here, the Court finds that Plaintiff has failed to state a retaliation claim against Defendant Thomas Harper because his alleged transfer of Plaintiff from one floor to another does not rise to the level of an "adverse action." In the Sixth Circuit,

> [a] transfer between cells is generally insufficient to constitute an adverse action, *see LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013), unless the transfer is coupled with an increase in security level, *see King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005), a restriction on the prisoner's freedom of movement within the institution, *see Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010), or some other negative consequence to the transfer, such as being placed among mentally ill inmates, *see Thaddeus-X*, 175 F.3d at 398.

*Parker v. Reddin*, No. 20-1106, 2020 U.S. Dist. App. LEXIS 24761, at *9-10 (6th Cir. Aug. 5, 2020).

Plaintiff does not allege that he was transferred to a cell on a floor that was more restrictive or had a higher security level than his prior cell assignment. Thus, the Court concludes that his transfer would not deter a person of ordinary firmness from filing a PREA complaint.

The Court additionally finds that Plaintiff's conclusory allegation that Defendant Thomas Harper engaged in retaliatory "scare tactics and other harassing techniques" is too vague for the Court to determine whether such conduct would "deter a person of ordinary firmness" from engaging in protected conduct.

For these reasons, the Court will dismiss Plaintiff's retaliation claim against Defendant Thomas Harper for failure to state a claim upon which relief may be granted.

### 3. Defendant Amanda Harper

#### a. Sexual Harassment

The Court construes the pleadings as asserting an Eighth Amendment sexual harassment claim against Defendant Amanda Harper.

The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Clause, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id*.

Another district court recently summarized the jurisprudence on sexual harassment under the Eighth Amendment as follows:

> Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to

8

> have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 U.S. App. LEXIS 3685, at *3 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards [absent contact or touching] did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 U.S. App. LEXIS 13533, at *5 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 U.S. App. LEXIS 1716, at *8 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 U.S. App. LEXIS 11463, at *4 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer groped him and made a homosexual advance did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schnieder*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

*Parker v. Unknown Party*, No. 2:18-cv-55, 2018 U.S. Dist. LEXIS, at *8-10 (W.D. Mich. May 31, 2018).

In light of the above jurisprudence, the Court concludes that Plaintiff's allegations that Defendant Amanda Harper flirted with Plaintiff, called Plaintiff "Big Sexy" and "Baby," and

9

"repeatedly trapped [Plaintiff] in odd areas of the prison to make comments about how sexy [Plaintiff] was" and "call[ed] [Plaintiff] over in a corner of the dorm and touch[ed] herself in front of [Plaintiff] . . . ." fail to satisfy the Eighth Amendment standard. Thus, the Court will dismiss Plaintiff's sexual harassment claim for failure to state a claim upon which relief may be granted.

### b. Discrimination

The Court also construes the pleadings as asserting a Fourteenth Amendment equal protection claim against Defendant Amanda Harper based upon her treatment of Plaintiff once she learned Plaintiff identified as transgender. Upon consideration, the Court will allow this claim to proceed. In allowing this claim to proceed, the Court passes no judgment upon its merit or the ultimate outcome of this action.

### 4. Violation of KDOC Policies and Procedures

Finally, to the extent that Plaintiff argues that Defendants Thomas and Amanda Harper violated certain KDOC policies and procedures, Plaintiff fails to state a claim upon which relief may be granted. *See, e.g.*, *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.").

### IV.

For the reasons set forth above, **IT IS HEREBY ORDERED** that **Plaintiff's official-capacity claims** are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that **Plaintiff's individual-capacity claims against Defendants Crews, Ferguson, and Thomas Harper; Plaintiff's sexual harassment claim against Defendant Amanda Harper; and Plaintiff's claims based upon a failure to follow KDOC Policies and Procedures** are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Because no claims remain against Defendants Crews, Ferguson, or Thomas Harper, **the Clerk of Court is DIRECTED to terminate these Defendants as parties to this action**.

The Court will enter a separate Service and Scheduling Order to govern the claim it has allowed to proceed.

Date: July 14, 2022

Greg N. Stivers, Chief Judge  
United States District Court

cc: Plaintiff, *pro se*  
    Defendants  
    General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel  
4416.011